**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

SHEET METAL WORKERS LOCAL 100       *
(BALTIMORE AREA) HEALTH AND          *
WELFARE FUND, et al.                 *
                                     *
         v.                          *        Case No. WDQ-11-3611
                                     *
FRICK ELECTRIC, HEAT & AIR CO., INC. *
                                     *
                                   ******

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses the Motion for Judgment by Default [ECF No. 7] filed by Plaintiffs Sheet Metal Workers Local 100 (Baltimore Area) Health and Welfare Fund ("Health Fund"), Sheet Metal Workers Local 100 (Baltimore Area) Annuity Plan and Trust ("Annuity Fund"), Sheet Metal Workers' Local Union No. 100 Apprenticeship Fund of the Baltimore Area ("Apprenticeship Fund"), Sheet Metal Workers Local #100 Death Benefit Fund ("Death Benefit Fund"), and Sheet Metal Air Conditioning National Alliance Mid-Atlantic Chapter ("SMACNA") (collectively "Plaintiffs").  Defendant Frick Electric, Heat & Air Co., Inc. ("Frick") has not filed an opposition, and its deadline has now passed.  On April 23, 2012, Judge Quarles referred this case to me to review Plaintiffs' motion and to make recommendations concerning damages, pursuant to 28 U.S.C. § 301 and Local Rule 301.6.  [ECF No. 9].  No hearing is necessary.  See Local Rule 105.6 (D. Md. 2011).  For the reasons discussed herein, I respectfully recommend that Plaintiffs' motion [ECF No. 7] be GRANTED and that damages be awarded as set forth herein.

## I.    BACKGROUND

On December 15, 2011, Plaintiffs filed a Complaint in this Court alleging that Frick failed to make contributions required under the Employee Retirement Income Security Act of

1974 ("ERISA").  Specifically, Plaintiffs allege that Frick employed members of local labor unions or district councils affiliated with Sheet Metal Workers Local 100 ("the Union") and agreed to abide by a Collective Bargaining Agreement ("CBA").  Compl.  ¶¶# 9-11.  The CBA specifically provides for payment by employer signatories to the Health Fund, Annuity Fund, Apprenticeship Fund, and SMACNA.  Compl. ¶ 11.  In addition, the CBA requires employer signatories to deduct death benefits from the wages of its employees for remittance to the Death Benefit Fund.  Compl. ¶ 12.  The Health Fund, Annuity Fund, Apprenticeship Fund, and Death Benefit Fund are "employee welfare benefit plans" or "employee pension benefit plans" as defined by ERISA.  Compl. ¶¶ 3-6.

As a corporate employer utilizing Union employees, Defendant Frick agreed to abide by the terms of the CBA.  Compl. ¶¶ 9-11.  Those obligations included (1) making full and timely payment on a monthly basis to Plaintiffs as required by the CBA; (2) filing monthly remittance reports with Plaintiffs showing the hours worked by each covered employee and the amounts owed to each Plaintiff; (3) paying liquidated damages and interest for amounts due as a result of Frick's failure to comply with its contractual and statutory obligations; and (4) permitting an audit of its payroll and business records.  Compl. ¶ 14-19.

Plaintiffs' Complaint alleges that Frick paid contributions and remittances belatedly for June, 2011, and failed to pay the amounts due from July, 2011 and August, 2011.  Compl. ¶ 22, 30, 38, 46, 54.  The Complaint requests sum certain amounts for the contributions/remittances and liquidated damages due to each fund, and requests interest in amounts to be calculated at the time of judgment.  Compl. ¶¶ 23-27, 31-35, 39-43, 47-51, 55-57.

Plaintiffs filed their Complaint on December 15, 2011.  Frick was served with the summons and complaint on December 22, 2011. [ECF No. 4].  After Frick failed to file an

answer or otherwise defend, Plaintiffs filed a Motion for Clerk's Entry of Default, [ECF No. 6], on March 12, 2012, which the clerk granted on April 23, 2012. [ECF No. 8].  Also on March 12, 2012, Plaintiffs filed a Motion for Default Judgment [ECF No. 7], seeking a total award of $2,956.23.  In support of their motion, Plaintiffs attached the Affidavit of Claire M. Kratz, who serves as the Administrator of the Health Fund, Annuity Fund, Apprenticeship Fund, and Death Benefit Fund, and the local agent for collection for the Mid-Atlantic Chapter of SMACNA (Paper No. 7-3), and the Affidavit of Counsel, Meghan C. Horn, Esq. (Paper No. 7-4). Following this Court's request for additional information regarding calculations [ECF No. 10], Plaintiffs submitted a more detailed affidavit from Ms. Kratz regarding the amounts owed.  [ECF No. 11-1].  Ms. Kratz's second affidavit alleges that Frick owes the Health Fund $771.12 in contributions, $63.23 in interest, and $115.67 in liquidated damages; that Frick owes the Annuity Fund $399.42 in contributions, $32.76 in interest, and $59.91 in liquidated damages; that Frick owes the Apprenticeship Fund $63.00 in contributions, $2.87 in interest and $18.90 in liquidated damages; that Frick owes the Death Benefit Fund $15.12 in unpaid remittances, $0.69 in interest, and $2.27 in liquidated damages; and that Frick owes SMACNA $18.90 in delinquent contributions and $0.52 in interest.  (Paper No. 7-3).  Ms. Kratz's affidavits specified that Frick paid contributions belatedly for hours worked by Frick employees during June, 2011, and that delinquent contributions for July and August, 2011 were estimated based upon those contributions.  [ECF Nos. 7-3, 11-1].  Ms. Kratz's affidavits further specified that the amounts were computed after credit was given for all payments made by Frick.  *Id.*  Ms. Horn's affidavit supported a request for attorneys' fees and costs in the amount of $1,395.00 pertaining to the Health Fund and the Annuity Fund.  (Paper No. 7-4).

## II.    STANDARD FOR DEFAULT JUDGMENT

In reviewing Plaintiffs' Motion for Judgment by Default, the court accepts as true the well-pleaded factual allegations in the complaint as to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001). It, however, remains for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. *Id.*; *see also* 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the court determines that liability is established, the court must then determine the appropriate amount of damages. *Ryan*, 253 F.3d at 780-81. The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *See, e.g., Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999). In so doing, the court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). The court can also make a determination of damages without a hearing so long as there is an adequate evidentiary basis in the record for an award. *See, e.g., Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (court need not make determination of damages following entry of default through hearing, but rather may rely on detailed affidavits or documentary evidence to determine the appropriate sum); *see also Tr. of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation Inc.*, 2011 WL 5151067 at *4 (D. Md. Oct. 27, 2011) (determining, in a similar case of default judgment against an employer, "the Court may award damages without a hearing if the record supports the damages requested."); *Pentech Fin. Servs. Inc. v. Old Dominion Saw Works, Inc.*, 2009 WL 1872535 at *2 (W.D. Va. June 30, 2009) (concluding that there was "no need to

convene a formal evidentiary hearing on the issue of damages" after default judgment where plaintiff submitted affidavits and electronic records establishing the amount of damages sought).

In sum, (1) the Court must determine whether the unchallenged facts in Plaintiffs' Complaint constitute a legitimate cause of action, and, if they do, (2) the Court must make an independent determination regarding the appropriate amount of damages and the appropriate injunctive relief.

## II.     DISCUSSION

### a.   Frick's Liability under ERISA and Contract Claims

Plaintiffs allege that Frick's failure to make its required contributions constitutes a breach of its contractual obligations, and therefore also constitutes a violation of Section 515 of ERISA. This Court agrees.

Section 515 of ERISA provides in relevant part:

> Every Employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with . . . such agreement.

29 U.S.C. § 1145.  As the Fourth Circuit has noted, "section 515 puts multiemployer plans in a stronger position than they otherwise occupy under common law contract principles." *Bakery & Confectionery Union & Industry Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997) (citations omitted).  Specifically, an employer is prohibited from asserting certain defenses against a multiemployer fund that the employer might be able to assert against the union itself.  *See, e.g., Cen. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Service, Inc.,* 870 F.2d 1148, 1153 (7th Cir. 1989) (noting that oral agreement to modify the text of a CBA cannot be enforced against pension plans); *Agathos v. Starlight Motel*, 977 F.2d 1500, 1505 (3d Cir. 1992) (holding that defense of fraud in the execution cannot be applied to pension funds).

ERISA allows the recovery of damages in an action to enforce the payment of unpaid contributions. 29 U.S.C. §1132(g)(2).

The Labor Management Relations Act, 29 U.S.C. § 185(a), provides for federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organizations representing employees in an industry affecting commerce." Employee benefit fund trustees have standing to sue under § 185(a) as third-party beneficiaries of a CBA. *See, e.g., Chicago Plastering Inst. Pension Trust Fund v. W.A. Duguid*, 761 F.Supp. 1345, 1347 n.2 (N.D. Ill. 1991); *Hudson County Carpenters Local Union No. 6 v. V.S.R. Constr. Corp.*, 127 F.Supp.2d 565, 568 (D.N.J. 2000).

As described above, Plaintiffs' Complaint alleges that Frick was party to a CBA that required contributions to be made to each Plaintiff, and further alleges that Frick failed to make the required contributions. Those allegations establish Frick's liability to Plaintiffs under both ERISA and the LMRA. *See V.S.R. Const. Corp.,* 127 F.Supp.2d at 568 ("It is well-established that the failure to make contributions to a union trust fund as required by a collective bargaining agreement constitutes a violation of ERISA § [1145] and a violation of LMRA § [185]."). On that basis, I recommend that Plaintiffs' Motion for Judgment by Default be granted.

### b. Damages

Under Section 502(g)(2) of ERISA, an employer who fails to make contributions required by Section 515 is liable to the multiemployer fund for the unpaid contributions, interest on the unpaid contributions, liquidated damages of up to twenty (20) percent of the amount of the unpaid contributions, and reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2).

### (1) Unpaid Contributions

According to Ms. Kratz's affidavits, Frick owes $1,267.56 in contributions and remittances to the funds for July and August, 2011.  [ECF Nos. 7-3, 11-1].  Her affidavits establish that the amounts of the contributions and remittances due were calculated on the basis of the contributions paid by Frick for June, 2011.  *Id.*  The Complaint alleges that such estimated calculation is permitted by the agreements governing the funds.  Compl. ¶ 20.  Using that basis, the amounts owed appear to have been calculated correctly.   As a result, I recommend an award of $1,267.56 in contributions and remittances as requested in the Motion for Judgment by Default.

### (2) Interest

Ms. Kratz's second Affidavit, ECF No. 11-1, sets forth the calculations of interest on the overdue amounts to each fund, for a total interest amount of $100.07.  Her affidavit explains the method of calculating the interest owed based upon the agreements governing each fund.  *Id.* The amount of $100.07 appears to have been appropriately calculated, and I recommend that it be awarded as requested.

### (3) Liquidated Damages

While the statute allows liquidated damages of up to twenty (20) percent of the amount of the unpaid contributions, the contractual agreements between the parties specify various percentages of permissible liquidated damages for each fund.  Compl. ¶¶ 14-16.  None of the contractually agreed percentages exceeds the statutory limit of twenty (20) percent.  Ms. Kratz's second affidavit details her calculations of liquidated damages, and she appears to have calculated correctly the liquidated damages due to each fund.  The total amount of liquidated damages in Ms. Kratz's second affidavit is $3.15 higher than the original request made in

Plaintiffs' Complaint and in their motion for default judgment.  Ms. Kratz asserts that there was an error in the original percentage used to calculate the liquidated damages owed to the Apprentice Fund.  [ECF No. 11-1].  Although the second affidavit appears to contain accurate calculations, Fed. R. Civ. Proc. 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  I therefore recommend an award of $193.60 in liquidated damages as originally requested in the Complaint.

### (4) Attorneys' Fees and Costs

Plaintiffs claim a total of $445.00 in costs for the complaint filing fee and the process server fee.  Those are reasonable charges for out-of-pocket expenses incurred by attorneys in the representation of their clients, and I recommend they be awarded.

In calculating the appropriate award of attorneys' fees, the Court must first determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008); *see Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award") (internal citations omitted).  A trial court may exercise its discretion in determining the lodestar amount because it possesses "'superior understanding of the litigation,'" and the matter is "'essentially'" factual. *Thompson v. HUD*, No. MJG-95-309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (quoting *Daly v. Hill*, 790 F.2d 1071, 1078-79 (4th Cir. 1986)).  Once the lodestar amount has been determined, the Court determines a reasonable fee by assessing whether the hours worked were reasonable or whether the request includes hours that were unnecessary or duplicative.  In evaluating both the lodestar calculations and the overall reasonable fee, this Court uses "the

twelve well-known factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)."   *Thompson*, 2002 WL 31777631, at *6 (footnotes omitted). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at *6 n.19 (*citing Johnson*, 488 F.2d at 717-19).

Plaintiffs' attorneys in this case billed an equal hourly rate of $200 for each of two attorneys who worked on the matter.  Because the attorneys had varying years of practice, the hourly rates charged for each attorney do not entirely comport with the "Guidelines Regarding Rates" set forth in Appendix B of the Local Rules of this Court.  However, these Guidelines are not definitive; they are "solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees." Loc. R. App'x B n.6.

Despite the divergence from the Guidelines, the total amount sought, $950.00, constitutes a reasonable fee for several reasons.  First, the total hours worked and billed appear reasonable. Second, while the attorney working the most hours, Meghan C. Horn, is billed at a rate arguably slightly higher than customary for an attorney with just over three years of experience,[1] the other attorney is billed at a rate lower than that permitted by the guidelines.   Finally, and most

---

[1] The Guideline hourly rate for an attorney admitted for less than five (5) years, like Ms. Horn, is $150-190.    $200 is therefore slightly above the range.   However, the other attorney, Brian G. Esders, has been a member of the bar for almost six and one-half years, and a rate slightly exceeding $200 would be acceptable under the Guidelines.

significantly, the total amount sought appears to be well within or below the range of fees and costs awarded in similar cases in this district. *See, e.g.*, *Int'l Painters and Allied Trades Indus. Pension Fund v. H.C. Ackerman & Son, Inc.*, 2012 WL 251963 (D. Md. January 24, 2012) (awarding $6,928.26 in fees and costs); *Plumbers & Steamfitters Local 486 Pension Fund v. RLS Heating, Air Conditioning, & Refrigeration, LLC*, 2010 WL 5391450 (D. Md. Dec. 22, 2010) (recommending an award of $5,845.75 in fees and costs). For those reasons, I recommend an award of fees and costs in the total amount of $1,395.00.

### Conclusion

For the reasons set forth above, I recommend that:

1.  The Court GRANT Plaintiffs' Motion for Judgment by Default [ECF No. 7]; and

2.  The Court award Plaintiffs $1,267.56 in unpaid contributions, $100.07 in interest, $193.60 in liquidated damages and $1,395.00 in legal fees and costs for a total of $2,956.23.

I also direct the Clerk to mail a copy of this Report and Recommendation to defendant Frick at the address listed on Plaintiffs' Complaint [ECF No. 1].

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated: <u>May 11, 2012</u>                              <u>        /s/        </u>

                                         Stephanie A. Gallagher
                                         United States Magistrate Judge